IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| FINNAVATIONS LLC,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>PAYONEER, INC.,<br><br>　　　　Defendant. | Civil Action No. 1:18-cv-00444-RGA |
| FINNAVATIONS LLC,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>STITCH LABS, INC.,<br><br>　　　　Defendant. | Civil Action No. 1:18-cv-00445-RGA |

**MEMORANDUM OPINION**

Stamatios Stamoulis, STAMOULIS & WEINBLATT LLC, Wilmington, DE; Jay Johnson (argued), KIZZIA JOHNSON, PLLC, Dallas, TX.

　　Attorneys for Plaintiff.

Jeremy D. Anderson, FISH & RICHARDSON, P.C., Wilmington, DE; Michael Vincent (argued) and Ricardo Bonilla, FISH & RICHARDSON, P.C., Dallas, TX.

　　Attorneys for Defendant Payoneer, Inc.

Jennifer Ying, MORRIS NICHOLS ARSHT & TUNNELL LLP, Wilmington, DE; Brian B. Michalek (argued), OLSEN & CEPURITIS, LTD, Chicago, IL.

　　Attorneys for Defendant Stitch Labs, Inc.

November 26, 2018


ANDREWS, U.S. DISTRICT JUDGE:

Presently before the Court are Defendant Payoneer, Inc.'s and Defendant Stitch Lab, Inc.'s Motions to Dismiss under 35 U.S.C. § 101. (C.A. 18-444, D.I. 7; C.A. 18-445, D.I. 9). The Parties have fully briefed the issue. (C.A. 18-444, D.I. 8, 17, 18; C.A. 18-445, D.I. 10, 14, 15). I heard argument on October 24, 2018. ("Tr." (D.I. 21)[1]). For the reasons set out below, I will grant Defendants' motions.

I.  **BACKGROUND**

Plaintiff filed suit against Defendants on March 23, 2018 alleging infringement of U.S. Pat. No. 9,569,755 ("'755 Patent"). (D.I. 1). The '755 Patent covers a method which "facilitate[s] the record keeping associated with online transactions." ('755 Patent at 1:14-15). Claim 9 of the Patent is representative:

> 9. A method of delivery of transaction data to a financial management program comprising:
> > using a network device to conduct an online financial transaction with a commercial web server;
> > searching, by a financial assistant on the network device, a set of transmitted data related to the online financial transaction;
> > determining, by the financial assistant on the network device, whether the searched data comprises transaction data for the online financial transaction;
> > when the searched data comprises transaction data in a first data structure compatible with conducting the online financial transaction, copying and storing, by the financial assistant on the network device, the transaction data and additional transaction data not included in the transmitted transaction data into in [sic] a second data structure compatible with the financial management program,
> > wherein the second data structure differs from the first data structure.

('755 Patent, claim 9).

The specification provides some general guidance on the various instrumentalities used to complete the method. A "commercial web server" is a commercial website such as Amazon.

---

[1] Unless otherwise noted, citations to the docket are to C.A. 18-444.

2

(*Id.* at 3:10-12). The "financial assistant" may be "any type of executable code." (*Id.* at 3:27-29). The "network device" is a computer, pager, cellphone or "other communication device." (*Id.* at 3:5-8). The "financial management program" is a program like Quicken. (*Id.* at 3:8-10). And the "transaction data" collected by the assistant preferably includes purchase date, product identification, and product prices. (*Id.* at 2:7-10).

## II. LEGAL STANDARD

### a. 12(b)(6) Motion to Dismiss

Rule 8 requires a complainant to provide "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Rule 12(b)(6) allows the accused party to bring a motion to dismiss the claim for failing to meet this standard. A court may grant a Rule 12(b)(6) motion only if, accepting the well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the complainant, it concludes that those allegations "could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

### b. 35 U.S.C. § 101 Patent Eligible Subject Matter

Section 101 of the Patent Act defines patent-eligible subject matter. It provides: "Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title." 35 U.S.C. § 101. The Supreme Court recognizes three categories of subject matter that are not eligible for patents—laws of nature, natural phenomena, and abstract ideas. *Alice Corp. Pty. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2354 (2014). The purpose of these exceptions is to protect the "basic tools of scientific and technological work." *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289,

3

1293 (2012). "[A] process is not unpatentable simply because it contains a law of nature or a mathematical algorithm," as "an application of a law of nature or mathematical formula to a known structure or process may well be deserving of patent protection." *Id.* at 1293-94 (internal quotation marks and emphasis omitted). In order "to transform an unpatentable law of nature into a patent-eligible application of such a law, one must do more than simply state the law of nature while adding the words 'apply it.'" *Id.* at 1294 (emphasis omitted).

In *Alice*, the Supreme Court reaffirmed the framework laid out in *Mayo* "for distinguishing patents that claim laws of nature, natural phenomena, and abstract ideas from those that claim patent-eligible applications of those concepts." 134 S. Ct. at 2355. First, the court must determine whether the claims are drawn to a patent-ineligible concept. *Id.* If the answer is yes, the court must look to "the elements of the claim both individually and as an 'ordered combination'" to see if there is an "'inventive concept'—*i.e.*, an element or combination of elements that is 'sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself.'" *Id.* (alteration in original). "A claim that recites an abstract idea must include 'additional features' to ensure that the [claim] is more than a drafting effort designed to monopolize the [abstract idea]." *Id.* at 2357. Further, "the prohibition against patenting abstract ideas cannot be circumvented by attempting to limit the use of [the idea] to a particular technological environment." *Id.* at 2358 (quoting *Bilski v. Kappos*, 561 U.S. 593, 610-11 (2010)). Thus, "the mere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention." *Id.*

Patentability under 35 U.S.C. § 101 is a threshold legal issue. *Bilski*, 561 U.S. at 602. Accordingly, the § 101 inquiry is properly raised at the pleadings stage if it is apparent from the face of the patent that the asserted claims are not directed to eligible subject matter. *See*

4

*Cleveland Clinic Found. v. True Health Diagnostics LLC*, 859 F.3d 1352, 1360 (Fed. Cir. 2017), *cert. denied*, 138 S. Ct. 2621 (2018). In those situations, claim construction is not required to conduct a Section 101 analysis. *Genetic Techs. Ltd. v. Merial LLC.*, 818 F.3d 1369, 1374 (Fed. Cir. 2016) ("[C]laim construction is not an inviolable prerequisite to a validity determination under § 101.") (brackets in original, internal citations and quotations omitted). Moreover, the Federal Circuit has held that the district court is not required to individually address claims not asserted or identified by the non-moving party, so long as the court identifies a representative claim and "all the claims are substantially similar and linked to the same abstract idea." *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*, 776 F.3d 1343, 1348 (Fed. Cir. 2014) (internal quotation marks omitted).

### III. DISCUSSION

Humans have kept accounting records for about 7000 years.[2] The '755 Patent attempts to capture part of this practice in the area of electronic financial recordkeeping through the use of a generic computer. The *Alice* step one analysis reveals that the claims of the the '755 Patent are plainly directed at a patent ineligible concept as (1) they attempt to capture a fundamental financial principle in violation of *Alice* and *Bilski*, and (2) they cover pure data manipulation as proscribed by *Content Extraction*. The *Alice* step two analysis shows that the claims amount to no more than the underlying abstract idea, rendering them patent ineligible under Section 101.[3]

---

[2] *A History of Financial Accounting (RLE Accounting)* 23 (J.R Edwards ed., 1st ed. 1989) (discussing the emergence of accounting in Mesopotamia, Babylon, and Egypt).

[3] Plaintiff emphasizes that the Applicant overcame a Section 101 rejection during prosecution. I have reviewed the relevant prosecution history. (D.I. 20). I recognize that Plaintiff makes many of the same arguments now as it did then. However, I am not persuaded that prosecution history, alone, can overcome a strong showing that a patent is patent ineligible. In the end, "all patents must be approved by an examiner at the USPTO in order to become a patent. The fact that [a] patent[] [was] not rejected by an examiner is not enough to support [an] argument that the patent[] [is] directed to a patent-eligible concept." *Glasswall Sols. Ltd. v. Clearswift Ltd.*, 2017 WL 5882415, at *5 (W.D. Wash. Nov. 29, 2017).

A. Alice *Step One*

To determine patent eligibility under Section 101, I "must first determine whether the claims at issue are directed to a patent-ineligible concept." *Alice Corp.*, 134 S. Ct. at 2355. Fundamental economic practices are one category of patent ineligible abstract ideas. *See Bilski*, 561 U.S. at 611 (hedging); *Alice*, 134 S. Ct. at 2356, 2357 (intermediated settlement); *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1372-73 (Fed. Cir. 2011) (verifying the validity of a credit card transaction); *buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1354-55 (Fed. Cir. 2014) (transaction performance guaranty). Computer implemented methods directed at collecting, analyzing, and storing data are similarly patent ineligible.

> [C]ollecting information, including when limited to particular content (which does not change its character as information), [is] within the realm of abstract ideas. In a similar vein, . . . analyzing information by steps people go through in their minds, or by mathematical algorithms, without more, [are] essentially mental processes within the abstract-idea category. And . . . merely presenting the results of abstract processes of collecting and analyzing information, without more (such as identifying a particular tool for presentation), is abstract as an ancillary part of such collection and analysis.

*Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1353-54 (Fed. Cir. 2016) (citations omitted).

When the generic implementation of the method claimed by the '755 Patent is stripped away, claims 1 and 9 reduce to the following conceptual elements:

1. Making a purchase;

2. Using an assistant to search data;

3. The assistant analyzing whether the data relates to a transaction; and

4. The assistant collecting transaction data from searched data and storing it in a different location along with other data.

(*See* '755 Patent, claims 1, 9). These elements describe the concept of "bookkeeping." Just like the patent ineligible hedging of *Bilski* or the intermediated settlement of *Alice*, bookkeeping is a "fundamental economic practice long prevalent in our system of commerce and taught in any introductory" accounting class. *Bilski*, 561 U.S. at 611. And, just like hedging and intermediated settlement, bookkeeping is a patent ineligible abstract idea.

I further conclude that these conceptual elements amount to no more than the abstract idea of using a generic computer to search, analyze, and store information. The Federal Circuit has repeatedly found claims directed at collection and manipulation of data to be patent ineligible. *See Elec. Power Grp., LLC*, 830 F.3d at 1353-54 (collecting cases). In particular, the '755 Patent is remarkably like the patent invalidated in *Content Extraction*. The *Content Extraction* patent related to extracting and storing financial data related to a transaction. 776 F.2d at 1345-46. Applying *Alice* step one, the Federal Circuit found that "the claims of the asserted patents are drawn to the abstract idea of (1) collecting data, (2) recognizing certain data within the collected data set, and (3) storing that recognized data in a memory." *Id.* at 1347. As in *Content Extraction*, the '755 Patent's attempt to claim bookkeeping relies on the recognized abstract concept of data collection and recognition. (*See, e.g.*, '755 Patent, claim 9) ("searching . . . a set of transmitted data" and "determining . . . whether the searched data comprises transaction data"). Accordingly, I conclude that the '755 Patent's claims, which amount to no more than data manipulation, are patent ineligible.

Plaintiff argues, without much explanation, that *DDR Holdings, LLC v. Hotels.com*, 773 F.3d 1245 (Fed. Cir. 2014), and *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327 (Fed. Cir. 2016), support the patent eligibility of the claims. (D.I. 17 at 9-13; Tr. at 36). Plaintiff's reliance on these cases is misplaced. The claims in *DDR Holdings* covered a system which prevents website

7

visitors from being taken to another website by clicking on a hyperlink. 773 F.3d at 1257. Unlike the claims of the '755 Patent, the *DDR Holdings* invention was "necessarily rooted in computer technology in order to overcome a problem specifically arising in the realm of computer networks." *Id.* That is, the *DDR Holdings* invention did not exist outside of the realm of online activity—a visitor to a brick-and-mortar store cannot be transported via the click of a button to a different store. In contrast, the Applicant explained during prosecution that the '755 Patent focuses solely on the real-world problems of manual data entry. (*See* D.I. 20-1, Amendment B at 8).

The Federal Circuit found the *Enfish* claims patent-eligible because "the self-referential table recited in the claims . . . [was] a specific type of data structure designed to improve the way a computer stores and retrieves data in memory." *Enfish*, 822 F.3d at 1339. In other words, the *Enfish* claims were directed to "a specific improvement to the way computers operate." *Id.* at 1336. The '755 Patent claims, however, provide no specific improvements to computer operation. They merely invoke a computer with standard computer functionality to produce a result.

The '755 Patent does not address a problem unique to computer technology. Nor does it announce an improvement in computer operation. Thus, *DDR Holdings* and *Enfish* do not contradict my finding that the claims are directed at patent ineligible subject matter.

B. Alice *Step Two*

Claims 1 and 9 of the '755 Patent recite performing an abstract idea using conventional computer functions: running a program, searching information, copying information, translating information, and transmitting information. These steps are "basic functions of a computer" and fail to transform the claims into patent eligible subject matter. *See Alice*, 134 S. Ct. at 2359-60.

8

Courts have consistently found such functions are not inventive. In *Alice*, for example, the Supreme Court held that claims reciting a "data processing system" with a "communications controller" for obtaining, modifying, and transmitting data was not inventive. *Id.* Similarly, the Federal Circuit has held basic computer functions to be insufficient to confer eligibility. *See, e.g., Intellectual Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1367-71 (Fed. Cir. 2015).

Even when the basic functions called for in the '755 Patent are considered "as an ordered combination," they do not reveal a "non-conventional and non-generic arrangement of known, conventional pieces" that might provide an inventive concept. *Bascom Global Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1350 (Fed. Cir. 2016). Unlike the improvements to computer technology that the Federal Circuit has found eligible at *Alice* step two, the claims here merely apply an "old solution" (bookkeeping) in a computer environment without specifying any non-conventional way to accomplish or practice the idea.

The predominant software functionality claimed in the '755 Patent—recording financial data—is identical to the function found to be non-inventive by the Supreme Court in *Alice*. In fact, the *Alice* court stated that electronic recordkeeping, such as electronic bookkeeping, is "one of the most basic functions of a computer." *Alice*, 134 S. Ct. at 2359. Further, the *Alice* court held that computer functionality "to obtain data, adjust account balances, and issue automated instructions" was well-understood, routine and conventional activity previously known to the industry. *Id.* The '755 Patent recites the same electronic recordkeeping and data collection functionality as the patent at issue in *Alice*. Thus, it fails to supply an inventive concept.

### IV. CONCLUSION

Claims 1 and 9 of the '755 Patent are directed to patent ineligible subject matter and do not contain an inventive concept. Plaintiff does not argue that the dependent claims supply

9

additional elements that might render them patent eligible. In fact, Plaintiff agrees that Claim 9 is representative. (Tr. at 29:3-5). Thus, because each of the claims of the '755 Patent are directed to unpatentable subject matter under 35 U.S.C. §101, Finnavations's Complaints fail to state a claim upon which relief can be granted. I will grant Defendants' motions to dismiss with prejudice.